I am Stephen Carrick, attorney for Petitioner and Appellant Bradford Phillips. We are here today to argue that the NASD panel of arbitrators exceeded their authority and acted in manifest disregard of the law when they found in favor of the claimant in that arbitration, Nina Katzin, and awarded damages in her favor against the broker-dealer in a first capital corporation of which Mr. Phillips was the president, and against Mr. Phillips, who did not appear in person at the hearing, but did not find any liability against any of the other persons who exercised direct control over the broker, Yossi Atiyah, who engaged in the evidently improper trading activity. So is it your position under the securities laws that the president of the company is not like the naval captain who is responsible for everything that occurs on board the ship, even though he may have been sleeping at the time in his wardroom? Not only is that my position, but that is the law under Section 20 of the 34 Act, Section 15 of the 33 Act, and Section 15 of the 34 Act. And the cases in this very circuit, in fact — Isn't he a control person? I guess I'm having a hard time understanding that last statement when I read the language of the statute defining control person. Well, in a very — he may be in a position of control. In fact, we don't deny that he is in a position of control. But that does not automatically, by virtue of his status, make him a control person liable under Section 20 of the 34 Act. Is that how you read — maybe I'm misreading the statute. I'm looking at 15 U.S.C. Section 77-0. Every person who, et cetera, et cetera, et cetera, by and through, controls any person liable shall also be jointly and severally liable. You're reading the statute correctly, but what you're not reading is the cases that have applied the statute as recently as February 2nd of this year in this very court. The case just came down. It was evidently argued on February 12th, but filed on February 2, and that's the — I apologize if I don't correct — pronounce it correctly — Dau Systems, Inc. case. And that — How does it spell? It's D-A-O-U Systems, Inc. Securities — it's in read D-A-O-U Systems, Inc. Securities Litigation. Justice Pregerson actually was on the panel. Now, listen, we're not — I'm not a justice. He's been promoted. You know, if you say that again, I'll go out and get myself three gold stripes. Pardon me. That's correct. In any event — As the great Walter Ely used to say, there is no justice on the Ninth Circuit. It always gets a laugh. In the very last section of that case, which was evaluating the propriety of plaintiff's claims under Sections 15A of the 33 Act and 20A of the 34 Act, I quote, it says, to state a claim under this section, a plaintiff must allege that the individual defendants had power or influence over the company, and that the individual defendants were culpable participants in the company's alleged illegal activity. And that cited the 1987 case of Durham v. Kelly, which we argued below to Judge Hupp, and he disagreed with us. But the fact is that the Ninth Circuit law, as stated even in Hollinger, as well as Durham v. Kelly, the Christoffel case, the Buehler case, and now, most recently, just nine days ago, the Daoud case, has a two-pronged test to attach liability to controlled persons. And I would be silly to argue that the president of the broker-dealer is not in a position of control. So you want to focus on the knowledge element. It's the knowledge, and it's the influence, and it's the culpable participation. And that's what was not shown in the arbitration. That's what was not there. And what is, you know — Well, let me just ask you, Mr. Kerry, would your position be if the president willfully blinded himself to the activities of the broker? In other words, the typical ostrich with its head in the sand don't want to know. Would that insulate a president of a brokerage firm from liability? Well, it might insulate the president of a brokerage firm from liability under Section 20A, but it would likely not insulate that same person from a negligent supervision claim or other claims. But in this case, all we're talking about is a 20A controlled person claim. And, in fact, that claim as it was alleged is barely even alleged. They don't allege any action on the part of Mr. Phillips or any inaction. In fact, he's not even named in any sense except to state that he is the president of the broker-dealer and, quote, a controlled person. They just make that leap of faith, which is not a strict liability test. If it were a strict liability, I wouldn't be here. And the Hollinger case makes that quite clear that there is a difference in a broker-dealer, the firm, the broker-dealer firm, the Merrill Lynch, the Interfirst Capital, the Prudential Beige, and the president of Merrill Lynch, Prudential Beige, and Interfirst Capital. Merely the status is insufficient. There has to be something more. And that something more is the knowledge of the improper trading activity. That something more is perhaps the direction of the improper trading activity. That something more is perhaps even the intentional hiding from that. But we don't have any of that in this case. We have absolutely no evidence that was presented at the arbitration that suggests Mr. Phillips had anything whatsoever to do with the improper trading activity of the broker, Yossi Atiyah, when he was trading on behalf of his prior intimate friend, Nina Katzen. And it's that question that you asked, Judge Tallman, is it also infects the entire brief of the other side when they talk about the burden of proof, because they say it's the burden of Mr. Phillips to prove that he is not a controlled person, and that's not the law. Well, you don't dispute the fact that he is a controlled person. It's the knowledge element that you're disputing. That's correct. It's the knowledge element. That's correct. I would think that he is in a position of control, but I do dispute if you're using controlled person in quotes so that liability automatically attaches. You're using controlled person as the statute defines it, and then you tell me, as informed by Ninth Circuit decisions like Dow, which fleshes out the reach of the statute, I guess would be the way to characterize it. Exactly. Not all controlled persons are liable. Under the Ninth Circuit interpretation of Section 20, which goes back to 1987 in the Durham case, Durham v. Kelly, there has to be more. And Hollinger, which was brought to the attention of the arbitrators, also addressed that in the footnote that we've drawn so much attention to, which is Note 24. That decision said, if you are the broker-dealer, if you are Merrill Lynch, if you are InterFirst Capital Corporation, you are a controlled person and you are strictly liable as a result of that status alone. Would you address at some point during your remaining 9 minutes and 45 seconds the applicability or lack thereof of Rooker-Feldman doctrine, given the fact that the State Court of Appeals has, I guess, confirmed or affirmed the confirmation of the arbitration award? Right. I will do that. First of all, I don't think it has any application whatsoever, because we are not asking this Court to issue any order that would overturn anything the Los Angeles Superior Court did or the Court of Appeal for the State of California, the Second District did. And that is what Rooker-Feldman does. What we are asking this Court to do is to look at the petition to vacate that we filed in this Court, pardon me, in the Federal Court, in the District Court, and to evaluate whether that petition to vacate was properly denied. Well, doesn't that run right contrary to the confirmation of the award? You want us to vacate it and the California courts affirmed it? That's correct. But they have a different standard. I can't see how you reconcile those two positions. Yeah. Why isn't that a Rooker-Feldman violation? Well, because we're not asking, because that award stands on its own. We're not asking you to do this. Well, then this case is moot. Well, this case is not moot, Your Honor, for several reasons. Number one, it may give us a claim against Katzen to retrieve any monies that were paid on the judgment. It may give you a claim that's not already been resolved by the arbitration? By the? That's what you took to the – that's what was taken to the California courts, wasn't it? Well, that was affirmed? Yes. That's the end of the arbitration, right? No. We went to the – there were parallel proceedings. There was a motion to confirm in the State court that Ms. Katzen filed because she did not want to be subject to the manifest disregard of law standard, and there was a companion or competing, I should say, motion or petition to vacate that we brought in the Federal court. They went on parallel tracks. Okay. But she won the race to the courthouse. She got a decision out of the Second District Court of Appeal before you could get a decision from the Ninth Circuit. Why doesn't that moot the Ninth Circuit appeal? Well, it doesn't moot it for the additional reason that Mr. Phillips is a licensed individual. Licensed to sell securities. And any adjudication, arbitration award or otherwise against him must be reported to the NASD and carried with him on his license. He has to report the California proceedings. Right. But he can also then report these proceedings, which vacated that very same award, so that it won't have a derogatory impact on his ability to conduct his securities business. He'll be able to argue that he's got a conflicting Federal decision on the identical issue that was decided by the State courts. That's correct. And now we're right back to Ruckerfeld. Well, no, we're not, because we're not asking this Court to vacate the State court judgment. But you're going to use it for just that purpose with NASD. No. With NASD, all we're going to do is say you can't engage in any disciplinary proceedings based upon the State court, because the Federal court found that we didn't do anything wrong. You can't use that as any precedent to — Unless you have a different understanding of Supreme Court authority, that's what I understand Ruckerfeldman to be telling Federal courts we aren't supposed to be doing. We're not supposed to be undermining the efficacy of the judgments of a State court on identical issues of law. Well, that's not what I understand Ruckerfeldman to say. Well, it is a complex doctrine. If you've got a different understanding, I'd be grateful for any help you can give me, because I have a hard time with it myself. But this one really — as I understand the doctrine, I think you're just dead in the water. So unless you can convince me otherwise, the oar is yours. Well, I thought I did a fairly decent job of convincing — of trying to convince you, anyway, in the brief that we submitted in opposition to the motion to dismiss. But the problem is I can't get to the merits unless you can convince me that I should be looking at the merits. And Ruckerfeldman tells me don't look at the merits, because to do so might undercut the basis of the California court determination, which confirmed the oar. That's not my understanding of the essence of Ruckerfeldman, and at least the way in which we briefed it and the way in which I understand it is that — Nobody briefed Ruckerfeldman because the State appellate decision hadn't been decided yet, right? No. In the motion to dismiss, we briefed the Ruckerfeldman doctrine because it was raised for the first time in that motion. And we opposed it on the grounds that Ruckerfeldman has no application, because Ruckerfeldman applies solely when you're asking a Federal district court to overturn a State court judgment. That is not what we did in this case. We filed a petition to vacate an arbitration award that had no other precedent anywhere else. I mean, there was a 10-day difference. I mean, if you want to bring in the timing on this race to the courthouse — and, in fact, we even cited several cases that said justice should not be determined by who wins the race to the courthouse first, especially when the parties are diligent and they have no control over the docketing of the various courts to which they are seeking — from which they are seeking relief. I mean, as it happens, this appeal was fully briefed and submitted well before the California State court appeal was briefed or submitted. And the petition to vacate was heard and, unfortunately, denied before the motion to confirm was heard and granted. And, in fact, in the petition to vacate that we filed with the Los Angeles district court, they, the other side, just made kind of an offhand request, well, if you're going to deny the petition to vacate, why don't you then just confirm the NASD award? Mr. Carrick, I have your response to the motion, I think. Okay. Filed in our court in September 13th, 2004. There's no index of cases or matters discussed in the brief. I've just briefly on the bench been through here looking for a cite to Rooker-Feldman. I didn't find one. The opposition? That's what you call it, opposition of Appellant Bradford Phillips to Appellee's request to dismiss appeal. There's no index of cases or statutes or anything in the front of the brief. You just start right in with jurisdiction. But I'm looking for the discussion of Rooker-Feldman. Rooker-Feldman is at page 4, Your Honor, unless I'm looking at a different document. Section B, the Rooker-Feldman doctrine is inapplicable. That's just what I was looking for. Thank you. Okay. I apologize. I apologize if it did not have an index of cases or statutes as well, Your Honor. We approach this as a ten-page opposition to a motion. Mr. Kerkab, in your research, did you come across the Ninth Circuit decision, 2003, of G.C. and KB Investments, Inc. v. Wilson, 326 F. 3rd, 1096? I don't believe that we did. As I read Wilson, it basically held that where you are seeking to have the arbitration award vacated on the grounds that the arbitrator exceeded the scope of his or her authority, that we can't review the decision because that same argument was made to the state courts, and they refused to do so by confirming the arbitration award. And as I read Wilson, 326 F. 3rd at 1104, Rooker-Feldman applies, and we can't do what you're asking us to do. Well, I'm not familiar with that decision, for which I apologize. However, we are before the we were before the district court on two grounds, the exceeding their authority and on the ground that the arbitrators acted in manifest disregard of the law. We were not before the Supreme Court on pardon me. We were not before the superior court in California on those grounds at all, if my recollection serves me. I believe that. So if Rooker-Feldman applies, it might only apply to a portion of the appeal? Is that what you're saying? That's certainly it would not never apply to the manifest disregard of law because that is not a grounds under State law to vacate an arbitration award, and we did not make that argument in the State court. I think that's right. So the State court grounds, the California State rules and statutes for vacating an arbitration award are narrower than the Federal statutes. And in this case, the agreement to arbitrate was governed by the Federal arbitration award, and we tried to get it heard in Federal court for that reason. We were denied in the first instance, and then they moved forward while this appeal was pending, and they got the relief they got. So it looks like I'm practically out of time. Well, this arbitration procedure, that's something that the securities people wanted. That's true, Your Honor. They liked that. They didn't want the courts. That's correct. They liked it because they thought it was, you know, for their benefit. That's absolutely correct, Your Honor. That's what happened. And as a result of that, actually, there aren't as many cases as there might otherwise be assisting parties and courts in determining what Section 20 liability is. I think this is a good opportunity to evaluate that. Well, you know, we have this statement from A.G. Edwards at Sons v. McCullough, 967 Fed 2nd, 1401, the 1992 Ninth Circuit case. It says the court should not reverse an arbitration award even in the face of erroneous interpretations of the law. Yes, I'm familiar with that case, and I understand it. But there is the standard that is the manifest disregard of the law. And in this case, when you have an arbitration panel that had before it the claimant's customer, the supervisor of the broker, the compliance officer of the company, and found neither the compliance officer nor the direct supervisor, the branch manager, who had the ability to control, who had the day-to-day supervision of this broker, when they were found to be not liable, then it's our position that a finding of liability against the President, who is that much of that broker's activities, that is a disregard of the law. That is a manifest disregard of the law. And that is why we have taken this to the extent that we have taken it, because you have an internally incongruous order from the panel. The broker, he settled out. There was no finding of liability by the broker, so we don't know what happened with him. The branch manager, he was found to be not liable. He had day-to-day supervision over the broker. The compliance officer, who is responsible to ensure compliance with the firm's procedures and with the law, he's found not to be liable. Instead, we find liability with the only person left standing who doesn't appear. It just seems to be a disregard of the Ninth Circuit application of Section 20 of the 34 Act. Okay. Well, we understand your argument. All right. Thank you. Thank you very much. Thank you. Good morning, Your Honors. I'm Mitchell Albert for Nina Capstan. The district court found that the petition to vacate borders on the frivolous and stated that it was without any merit. We ask that you affirm or confer, well, affirm the district court. I'd like to start with. Well, I don't know. Before we, without regard to frivolity, I mean, it does seem a little odd to me, almost like an inconsistent jury verdict for the arbitrators to have completely absolved everybody in the middle from liability and then tagged the president of the company. Actually, not at all. And I think there's two responses to that. First, we could just as easily argue that the arbitrators were wrong in not tagging the intermediate supervisors. That would be a question of fact which isn't reviewable, and we're not here to do that. But secondly, and I think more importantly, under Hollinger in the Section 20 of the Exchange Act case law, the control person, once you've shown he's the control person, which I think we showed Mr. Phillips is, it's his burden to show his good faith. The case law and the actual words of the statute are quite clear on that. So the reason there's no inconsistency and the reason the arbitrators actually got it right before you even get to manifest disregard is that Mr. Wright and Mr. Briggs, the two intermediate-level supervisors, they were there. They showed up and they testified. So, again, the arbitrators were potentially wrong in not holding them liable. That would be my spin on it. But to make the things consistent, they simply found they appeared, they testified, they met their burden.  And that's why I think there is no inconsistency there. And I think that, frankly, is the appellant finished with that argument because they thought that that's their strongest hook to show anything. And I think there is a very good legal justification for what the arbitrators did before you even get to manifest disregard. But if I could back up for one second, I would like to address the motion to dismiss this, I think, as a starting point based on Rooker-Feldman. And I think the Court has put its finger on the Hobson's choice that appellant has under the Rooker-Feldman doctrine. And that is it's not correct to say that Rooker-Feldman applies only if this were a Federal action specifically to overturn a State court judgment. It's that. But it's also if they ask the Federal court to reverse something, to do something that's inextricably intertwined, as the case language, with what the State court has done. So they clearly couldn't have filed a new district court action now to vacate the arbitration award. And the fact that the timing is a little different doesn't affect the inextricably intertwined-ness, so to speak. And what that means is it's inextricably intertwined when, to give the relief that they are requesting, this Court would have to effectively void or negate the State court judgment. And that is what they're doing. And you can see that from their opposition to the motion to dismiss, because they're saying they want to go back and try to get the money back that's been paid on the final State court judgment. So that's sort of part one of the Hobson's choice. If they say they want to get the money back, then they're showing that Rooker-Feldman does apply, because they are effectively asking you to void the State court judgment. If they're saying they don't want to void the State court judgment and they don't want to get their money back, and this is just some sort of intellectual pursuit, well, then it's moot. And as the Court noted, so I think either way, Rooker-Feldman does doom them, because it either is inextricably intertwined or it's moot. So I think the motion to dismiss should be granted. If the Court should reach the merits of the appeal, I would just say briefly three points. One, the argument that the arbitrators exceeded their authority is completely without merit, as the district court found. I mean, Mr. Phillips answered, his attorney appeared on his behalf. He was there. He was subject to the jurisdiction. So that's without merit. Their argument really up until the reply brief in this case was that we had to show Mr. Phillips was a culpable participant. And again, that's not the law under Hollinger, which I believe is still the law of the circuit, which is once we've shown the control person his burden to show his good faith, he didn't meet that because he didn't testify. So there's no basis for that argument. And the culpable participation argument is wrong. And now, really on the reply brief, they're arguing for the first time that we didn't show he was a control person because, well, that's their argument. I would submit three things in response to that. One, we did show enough, the, quote, six facts that are cited in the briefs, and he was the president of a small brokerage firm. And the Hecht case, which we cited, shows that brokerage firms have a duty to impose their own systems of control, and there's no evidence that that was done. So that's point one. Point two is it's a question of fact whether somebody is a control person under the Arthur Children's Trust case, and under the Cootie v. Barrington, or Barrington v. Cootie, I can't recall which way it was, questions of fact, findings on questions of fact by the arbitrators are not reviewable. And then finally, the record is absolutely devoid of any evidence that they raised the argument that Mr. Phillips was not a control person before the arbitrators. So if they didn't raise the argument which raises the legal issue which they say the because this argument that Mr. Phillips was not a control person was never raised to the arbitrators, and, in fact, it was first raised here. So I think, frankly, those issues are all without merit, and that's they've put Mrs. Phillips, I'm sorry, Ms. Katzen, through her steps, through numerous systems, including the bankruptcy court, and there is no merit to these arguments they've We've asked that the Court deem it frivolous under Rule 38, so that Ms. Katzen can say. Kennedy. Counsel, you cite Rule 38 in your reply brief in the index as appearing at page 8, which is the certificate page, and I think Rule 38 is alleged at page 6 of the reply brief. Did you read this before you let it go? Pardon me? Did you read this before you let it go, before you filed it? Which brief, Your Honor? You filed a reply brief, right? No, Your Honor. Oh, it's a reply of Phillips. Okay. It was filed by Mr. Kerry. Excuse me. Okay. They've got the index wrong with the anyway. What's the basis for a Rule 38 claim? Well, I think the three arguments that they've made, none of them hold any water. Again, exceed the arbitrator's authority. There's nothing to that. Mr. Phillips was named in the statement of claim. He was subject to the jurisdiction of the NASD as a member under their rules. He appeared by answering. He appeared at the arbitration through an attorney. So the argument that they exceeded their authority is totally without merit. Well, when you skip over intermediates and go to ultimate liability, I take it that there's some consternation on the other side provoking an appeal, right? Well, there may be consternation. Just because you lose an appeal doesn't mean we're going to impose 38 sanctions. They're really rare indeed. I understand that. And I can understand when you say there may be consternation, but that doesn't come anywhere close to creating that they exceeded their authority, because Mr. Phillips did not testify and the other two did. So, you know, I won't belabor the point, but I don't think there's any evidence of exceeding their authority. The culpable participation argument was wrong as a matter of law, that it was our burden to show that. And there can't be manifest disregard on this issue that we didn't show Mr. Phillips was a control person for the simple reason that the record is absolutely devoid that they ever made that argument to the arbitrators. So that, in a nutshell, is our basis, Your Honor, and I understand that. I'll just submit on that. Okay. Do you have no supplemental affidavit or anything on file with us in connection with your 38 request? No. It's the arguments that we made in that brief. Thank you. Thank you, Your Honor. Thank you. Well, you don't have any time, but we'll give you a minute, huh? Thank you. I just want to address the one point about what this circuit, how this circuit has construed and applied Section 20A. Can we find the arbitrators acted in manifest disregard of circuit law if the decision didn't come down until a few days before this oral argument? Well, the decision that came down a few days ago merely reiterates the law that was in place since 1987, the Kelly v. Durham case. It's not new. And the Hollinger case is also not new. And you're not, I mean, they had Hollinger, right? Yeah. Hollinger was argued at the arbitration. Right. So we know they were aware of Hollinger. That's right. Presumably Kelly, although I don't, you didn't mention in your briefs that Kelly was necessarily brought to their attention. Well, and Christoffel and Buehler and all of the cases cited within Hollinger. So all I'm saying is that I disagree vehemently. The last point I would like to make is that I disagree vehemently with Ms. Kasson's position that we somehow have the burden of proof here. We don't. It shifts to us only after they have shown that we were in a position of control and that we actually exerted that control by having knowledge of the improper trading activities. That's when the good faith defense comes in. And if you can show you have good faith, you can then get out from that liability. And that's the defendant's burden. It is always the plaintiff's burden. Securities law is not some magical other area of law where plaintiffs don't have the burden to prove their case. They must prove you were a control person as the Ninth Circuit defined it. And Hollinger went to great pains to say the status only applies to the broker-dealer firm. It does not apply outside that context. And I thank you very much for giving me the extra time. This matter will stand submitted. We'll come to the final matter on the calendar this morning. Carla Abbott.
judges: Pregerson, Beezer, Tallman